UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

DANIEL RAYMOND STELZER,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

1:18-cv-00015-NLH

**OPINION**

---

**APPEARANCES:**

MARYJEAN ELLIS
LAW OFFICE OF MARYJEAN ELLIS LLC
93 MAIN STREET #6
NEWTON, NJ 07860

KARL E. OSTERHOUT
OSTERHOUT BERGER DISABILITY LAW, LLC
521 CEDAR WAY, SUITE 200
OAKMONT, PA 15139

    *On behalf of Plaintiff*

DAVID LEACH
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] under Title II of the Social Security Act. 42 U.S.C. § 423, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, July 8, 2013. For the reasons stated below, this Court will affirm that decision.

I.  BACKGROUND AND PROCEDURAL HISTORY

On February 8, 2014, Plaintiff, Daniel Raymond Stelzer, protectively filed an application for DIB,[2] alleging that he became disabled on July 8, 2013. Plaintiff claims that he can no longer work as a janitor due to his pulmonary disease, among other impairments.

Plaintiff's claim was initially denied and then again upon reconsideration. Plaintiff requested a hearing before an ALJ, which was held on October 6, 2016. On January 6, 2017, the ALJ

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on November 7, 2017, making the ALJ's January 6, 2017 decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

**II.  DISCUSSION**

   **A.   Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative

> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

### B. Standard for DIB

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[3] for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the

---

[3] The regulations were amended effective March 27, 2017. See 82 F.R. 5844. Because the ALJ issued her decision prior to that effective date, the Court must employ the standards in effect at the time of her decision.

>           claimant will be found "disabled."
>
>    4.    If the claimant can still perform work she has done in
>          the past ("past relevant work") despite the severe
>          impairment, she will be found "not disabled."
>
>    5.    Finally, the Commissioner will consider the claimant's
>          ability to perform work ("residual functional
>          capacity"), age, education, and past work experience
>          to determine whether or not she is capable of
>          performing other work which exists in the national
>          economy.  If she is incapable, she will be found
>          "disabled."  If she is capable, she will be found "not
>          disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that even though Plaintiff had worked since his alleged onset date of July 8, 2013, Plaintiff's work did not qualify as substantial gainful activity ("SGA"). At step two, the ALJ found that Plaintiff's impairments of restrictive ventilatory defect with a paralyzed left hemidiaphragm and obesity were severe. At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments. For step four, the ALJ then determined that Plaintiff's residual functional capacity ("RFC") rendered him capable of performing unskilled work at the light exertional level,[4] which encompassed his previous work as a janitor.[5]

Plaintiff argues that the ALJ erred in considering the

---

[4] See 20 C.F.R. § 404.1568 ("[O]ccupations are classified as unskilled, semi-skilled, and skilled."); 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

[5] Because the ALJ determined at step four that Plaintiff was capable of performing his past relevant work, the ALJ did not reach step five in the sequential step analysis. Benjamin v. Commissioner of Social Security, 2019 WL 351897, at *4 n.9 (D.N.J. 2019) (citing Valenti v. Commissioner of Social Sec., 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. § 404.1520(b)-(f)).

8

opinion of his treating physician, pulmonologist Dr. Stuart Mest M.D., FCCP, FACP, in making the RFC assessment and reaching the ultimate conclusion that Plaintiff was capable of performing his past work as a janitor. Plaintiff argues that the ALJ also erred when she considered Plaintiff's part-time work, performed after the claimed disability onset date, as a factor against finding Plaintiff disabled, rather than as a factor in favor of Plaintiff's credibility. The Court does not find that the ALJ erred in her assessment of these issues.

In making the RFC determination, the ALJ is required to do the following:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings . . . . By other evidence, we mean . . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529. The RFC reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a). The controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner, not medical providers. 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c).

9

In this case, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he could occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch and crawl; and have only occasional exposure to extreme cold, heat, humidity, or pulmonary irritants such as excessive dust or chemical fumes.

(R. at 15.)

The ALJ then found, based on the testimony of a vocational expert, that Plaintiff's previous relevant work as a janitor/cleaner fell into this category as it was performed generally in the national economy. (R. at 22-23.)

In making this assessment, the ALJ detailed the medical evidence, including the findings and opinions of Plaintiff's treating pulminologist, Dr. Mest. On October 2, 2014, Dr. Mest completed a medical source questionnaire, in which Dr. Mest found the following:

> Dr. Mest concluded that the claimant was incapable of low stress jobs (Exhibit 14F). He could stand or walk for less than 2 hours in an 8 hour work day and sit for 6 hours in an 8 hour work day. He needed to take unscheduled breaks every 30 to 60 minutes for 15 to 20 minutes to sit. He could occasionally lift less than 10 pounds and rarely lift 10 pounds. He could occasionally twist, rarely stoop and crouch and never climb. He was to avoid even moderate exposure to extreme cold and heat, high humidity and wetness and all exposure to smoke, perfume, soldering fluxes, solvents, cleaners, fumes, odors, gases, dust, and chemicals. He concluded that the claimant was disabled from pulmonary disease.

(R. at 22, 419-22.)

The ALJ explained her assessment of Dr. Mest's opinion. (R. at 23.) The ALJ afforded great weight to Dr. Mest's opinion that Plaintiff could sit for 6 hours in an 8-hour work day and occasionally crouch because she found this opinion was consistent with the medical record as a whole. As for the remainder of Dr. Mest's answers on the questionnaire, the ALJ assigned little weight to his opinions:

> The claimant continued to work during 2013 and 2014 and in 2014 at an exertional level requiring more standing and walking than Dr. Mest's opinion, and his income was within $300.00 of the substantial gainful activity threshold (Exhibits 6D and 8D). He could perform six minute walk tests without desaturating and his pulse oximetry testing never reached below 90 percent.

(R. at 23.)

With regard to Plaintiff's medical treatment notes, the ALJ related:

> The claimant underwent treatment in 2015 through July 2015 (Exhibits 25F and 26F). The claimant complained about fatigue in June 2015 but it was noted that he was holding fluid in his legs. The claimant's FEV1 level improved in July 2015 from its 2014 level and he continued to perform a six minute walk test without de-saturating to the point of needing oxygen. The claimant underwent treatment with his pulmonologist, Dr. Mest, only twice a year and after February 2014, he did not return to Dr. Desai for further treatment suggesting that he was stable. The claimant engaged in work related activities into 2015 (Exhibit 8D). Based upon objective findings, I find that the claimant's functioning was not negatively affected from the cardiac component of his cardiopulmonary functioning based upon the evidence before me (Exhibits 9F and 25F).

(R. at 21.)

In sum, the ALJ concluded that Plaintiff's ability to

11

perform the activities necessary to continue his janitor position, although at a level slightly below the SGA threshold, was not consistent with Dr. Mest's opinions as to the disabling nature of Plaintiff's pulmonary impairment.

Plaintiff argues that the ALJ should have fully credited Plaintiff's treating physician, who is also a specialist in Plaintiff's condition, and by failing to do so, the ALJ violated SSA regulations and Third Circuit precedent. Plaintiff further argues that instead of using his work ethic as a factor against Plaintiff's claims of disability, the ALJ should have weighed his continued efforts to work as a mark in favor of Plaintiff's credibility as to how his severe impairments render him incapable working at an SGA level.

While it is true that a "cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time," Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations and quotations omitted), an ALJ may reduce her reliance upon a treating physician's opinions if those opinions are inconsistent with other medical evidence, and if she explains her reasoning. Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or

part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."), cited by Brownawell v. Commissioner, 554 F.3d 352, 355 (3d Cir. 2008)); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them.... [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").

This is exactly what the ALJ did here. At the same time Dr. Mest concluded that Plaintiff was "disabled from pulmonary disease," Plaintiff continued to perform activities that exceeded Dr. Mest's opinions as to Plaintiff's limitations. The ALJ properly explained this inconsistency and how that affected her assessment of Dr. Mest's opinion and Plaintiff's RFC. See Wilkinson v. Commissioner Social Sec., 558 F. App'x 254, 256 (3d Cir. 2014) (citations omitted) (explaining that "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight," and that the ALJ was not required to adopt all of a treating source's opinion solely because she found the opinion as a whole persuasive, as it is not a court's role to "re-weigh the evidence of record and substitute [our] judgment as to whether

13

[the claimant] is disabled under the Act for that of the ALJ").

Moreover, two additional points of law support the ALJ's assessment of Dr. Mest's opinions. One, as noted by the ALJ (R. at 23), the RFC finding is a determination expressly reserved to the Commissioner of Social Security – a claimant's medical provider's opinion on that issue is not controlling. 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). Two, Dr. Mest's opinion was provided on a form, which is considered "weak evidence." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); Zonak v. Commissioner of Social Sec., 290 F. App'x 493, 497 (3d Cir. 2008) (affirming the ALJ's rejection of the plaintiff's treating physician's opinion because it was provided on a check-box form and no reasons were given in support of the doctor's conclusion on that form). Thus, the Court finds that the ALJ's assessment of Plaintiff's treating physician's medical records and opinions was proper.[6]

---

[6] Plaintiff also takes issue with the ALJ's assessment of the consultative examiners' opinions, arguing that they were not pulmonary specialists, and their opinions were issued in 2014 without the benefit of more recent examinations. Plaintiff argues that it is unclear what those consultative examiners' reports would have said if they had been updated. The Court rejects this argument for three reasons: (1) the ALJ properly explained why she accepted and rejected those opinions (R. at 22); (2) Plaintiff does not point to updated medical records to show how the consultative examiners' reports could have been

14

With regard to Plaintiff's arguments concerning how the ALJ viewed Plaintiff's part-time employment after his alleged disability onset date, the Court is not persuaded that the ALJ erred. Plaintiff testified that even though he did work, it was for only four hours a night, and under special accommodations. Plaintiff also testified that when his employer asked him to work eight hours a shift, Plaintiff declined because he felt he would not be physically able. Plaintiff argues that the ALJ improperly failed to address those special accommodations, and in the RFC assessment the ALJ was not permitted to consider work a claimant performs with accommodations. Plaintiff further argues that the ALJ should have credited the fact that he endeavored to work while he suffered from severe disabilities as a sign of his credibility as to the disabling nature of his impairments, and not as a factor against his disability claim.

Although the ability to work under special conditions, such as by receiving accommodations from an employer, does not equate to the ability to perform substantial gainful activity, 20 C.F.R. § 404.1573(c), that analysis is applied at step one to determine whether Plaintiff engaged in SGA, which if he did,

---

impacted; and (3) it is Plaintiff's burden to prove his disability. Wallace, 722 F.2d at 1153 (explaining the five-step burden shifting analysis); Plummer, 186 F.3d at 428 ("The claimant bears the burden of demonstrating an inability to return to her past relevant work.").

would preclude from the start Plaintiff's disability claim. See, e.g., Beeks v. Commissioner of Social Security, 363 F. App'x 895, 897 (3d Cir. 2010) (explaining that the "special considerations" provision in § 404.1573(c) is applied to the step one analysis). In this case, the ALJ properly did not consider Plaintiff's part-time employment to be SGA.

Instead, the ALJ referred to Plaintiff's continued work as a janitor as evidence, just like the medical evidence and Plaintiff's testimony, to support the RFC assessment. 20 C.F.R § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Plaintiff testified that he was responsible for cleaning the cafeteria, for which he "always had help," but when his employer asked him to clean the entire first floor and work an eight-hour shift, he went "above their heads" to complain, and was fired as a result. (R. at 16; 48-50; 62-65.) He further testified, "It would have been great if they left me alone doing what I was doing." (R. at 62.)

The ALJ considered this testimony (R. at 16), which supports the ALJ's assessment that Plaintiff was capable of performing light, unskilled work with certain accommodations, which matched the very job he was doing (R. at 15, 23-24). Additionally, the record evidence does not show that his accommodations were not simply self-imposed, and it is

Plaintiff's burden to establish the special conditions which rendered him capable of performing that job. See Gonzalez v. Commissioner of Social Security, 2016 WL 1306012, at *9 (D.N.J. 2016) (citing Jackson v. Comm'r of Soc. Sec., 36 F. App'x 498, 499 (3d Cir. 2002)) ("The ALJ does not bear the burden of establishing that [the plaintiff's] past relevant work is substantial gainful activity, or that the work was performed under special conditions taking into account the plaintiff's impairments.").

In short, while efforts of a disability claimant to work, or a long work history demonstrating a strong work ethic, are indeed relevant to a claimant's credibility, Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) ("[W]hen the claimant has a work record like Dobrowolsky's twenty-nine years of continuous work, fifteen with the same employer his testimony as to his capabilities is entitled to substantial credibility."), the ALJ's credibility assessment is entitled to great deference.[7]

---

[7] Effective March 26, 2016, the SSA issued Social Security Ruling 16-3p, which superseded SSR 96-7p, to eliminate the use of the term "credibility."  SSR 16-3p explains, "We solicited a study and recommendations from the Administrative Conference of the United States (ACUS) on the topic of symptom evaluation.  Based on ACUS's recommendations and our adjudicative experience, we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term.  In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character.  Instead, we will more closely follow our regulatory language regarding symptom evaluation. . . .   In evaluating an individual's symptoms, our

Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014) ("[T]his Court defers to the ALJ's assessment of credibility."); Metz v. Federal Mine Safety and Health Review Com'n, 532 F. App'x 309, 312 (3d Cir. 2013) ("Overturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference."); 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). The ALJ properly considered all the record evidence, including Plaintiff's treating physician's records and opinions, Plaintiff's testimony, and his part-time employment after the alleged disability onset date, in formulating Plaintiff's RFC, and concluding that Plaintiff retained the ability to perform the janitor/cleaner job at the SGA level.

---

adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3p. This Court employs the term "credibility" here in the context of whether Plaintiff's statements are supported by other record evidence, rather than with regard to Plaintiff's overall character or truthfulness, which the Court has no reason whatsoever to question. See, e.g., Levyash v. Colvin, 2018 WL 1559769, at *8 (D.N.J. 2018) (explaining that SSR 16–3P announced a policy against evaluating claimant's truthfulness in determining whether individuals are disabled, but even though SSR 16–3p clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same).

The Court finds no reason to overturn that assessment.

**III. Conclusion**

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations. Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal that applies to the assessment of all of the other standards: A district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). The Court finds in this case the ALJ's determination that Plaintiff was not totally disabled as of July 8, 2013 is supported by substantial evidence. The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date: February 27, 2019             s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.